**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| NITA PATEL, | : | |
|  | : | Civil Action No. 17-7485 (SDW) |
| Petitioner, | : | |
|  | : | |
| v. | : | **OPINION** |
|  | : | |
| UNITED STATES OF AMERICA, | : | |
|  | : | |
| Respondent. | : | |
|  | : | |

APPEARANCES:

AUBREY C. EMRICH, Esq.
SAXTON & STUMP, LLC
123 SOUTH BROAD STREET
SUITE 2800
PHILADELPHIA, PA 19109

and

MARK E. CEDRONE, Esq.
JESSE DAVID ABRAMS-MORLEY, Esq.
Cedrone & Mancano, LLC
230 S. BROAD STREET
SUITE 1100
PHILADELPHIA, PA 19102
        On Behalf of Petitioner

BARRY PATRICK O'CONNOLL, Assistant United States Attorney
United States Attorney's Office
970 BROAD STREET
NEWARK, NJ 07102
        On Behalf of Respondent

**WIGENTON**, District Judge

    Presently before the Court is Petitioner Nita Patel's ("Petitioner") Rule 59(e) Motion to

Alter or Amend Judgment in this matter (ECF No. 57), Brief in Support of Petitioner's Rule 59(e) Motion to Alter or Amend Judgement (Docket No. 58), Declaration of Kirtish Patel (ECF No. 59), Respondent's Opposition Brief (ECF No. 62), and Petitioner's Reply to Government's Response in Opposition to Petitioner's Motion to Alter Judgment. (ECF No. 66). For the reasons set forth below, this Court will deny Petitioner's motion to alter or amend judgment.

## I.     PROCEDURAL HISTORY

On September 26, 2017, Petitioner filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, challenging her conviction and sentence for healthcare fraud in violation of 18 U.S.C. § 1347, in *USA v. Patel*, Crim. Action No. 15-592 (ES) (D.N.J) (ECF No. 1). Petitioner filed an amended § 2255 motion on December 12, 2017, alleging ineffective assistance of counsel from pre-plea investigation through sentencing. (ECF No. 4.) This case was stayed on September 29, 2020, while Petitioner awaited a response from a Freedom of Information Act request; and the case was reopened on December 13, 2021. (ECF Nos. 38, 40.) On December 22, 2022, this Court denied Petitioner's amended § 2255 motion and supplemental motion for a hearing, and closed the case. (ECF Nos. 55, 56.) Petitioner now moves, pursuant to Federal Rule of Civil Procedure 59(e), for this Court to reconsider the denial of her amended § 2255 motion.

## II.    FEDERAL RULE OF CIVIL PROCEDURE 59(e)

### A.     Legal Standard

Federal Rule of Civil Procedure 59(e) governs motions to alter or amend a judgment. "The scope of a motion for reconsideration [under Rule 59(e)]… is extremely limited." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011). Such a motion may be granted only on "one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3)

the need to correct a clear error of law or fact or to prevent manifest injustice." *Id.* (quotation marks omitted) (quoting *Howard Hess Dental Labs., Inc. v. Dentsply Int'l Inc.*, 602 F.3d 237, 251 (3d Cir. 2010)). Only evidence that was not previously available is "new evidence" for Rule 59(e) review. *Id.* at 415-16. "'Rule 59(e) motions cannot be used to present new arguments that could have been raised prior to judgment.'" *Id.* at 416 (quoting *Howard*, 533 F.3d at 475). Reconsideration of a judgment is an extraordinary remedy. Therefore,

> such requests are to be granted "sparingly," *Maldonado v. Lucca*, 636 F.Supp. 621 (D.N.J. 1986); Charles A. Wright, Arthur R. Miller & Mary Kay Kane, [*Federal Practice and Procedure: Civil 2d*] § 2810.1, and only when "dispositive factual matters or controlling decisions of law" were brought to the court's attention but not considered. *Pelham v. United States*, 661 F.Supp. 1063, 1065 (D.N.J.1987).

*P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 352–53 (D.N.J. 2001).

**B.   Discussion**

Petitioner raises the following five claims in her motion:

> 1. The Court Committed Clear Error by Failing to Consider and Adhere to Controlling United States Supreme Court Precedent Cited by Petitioner in Her § 2255 Motion, and Reviewed Petitioner's Entire § 2255 Motion Through an Inappropriate and Constitutionally Deficient Lens.
>
> 2. As Petitioner Pled in Her Initial 2255, a More Beneficial Plea Offer Existed that Defense Counsel Never Conveyed, Requiring the Court to Vacate the Dismissal Order and Conduct an Evidentiary Hearing.
>
> 3. The Plea Colloquy was Constitutionally Deficient, and Attorney Arleo Failed to Adhere to Padilla Protections.
>
> 4. The Court Misunderstood the Record as to Loss Calculation.
>
> 5. The Court Quite Improperly Left the Record and Raised Issues and Defense on the Government's Behalf Relying on Non-Precedential New Jersey State Court Law While Denying

Petitioner Her Constitutional Right to Investigate and Rebut.

This Court will address each contention in turn.

1. **Controlling Supreme Court Precedent and Failure to Convey Plea Offer**

In her first two arguments in support of reconsideration, Petitioner contends that this Court ignored three controlling Supreme Court cases, which held that the Sixth Amendment protections described in *Strickland v. Washington*, 466 U.S. 668 (1984), apply with equal force to the plea bargaining process: *Missouri v. Frye*, 566 U.S. 134 (2012); *Lafler v. Cooper*, 132 S. Ct. 1376 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010).[1] In *Frye*, the Court held "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Frye*, 566 U.S. at 145. In *Lafler*, the Court held that where counsel's advice to reject a plea offer was constitutionally deficient, there was a full and fair trial by jury, and the defendant received a harsher sentence than offered in the plea bargain, the court has discretion to fashion an appropriate remedy. 566 U.S. at 171. Finally, in *Padilla*, the Court held "counsel must inform her client whether his plea carries a risk of deportation." 559 U.S. at 374.

In response, the Government asserts an evidentiary hearing is not required where Petitioner's claim of an uncommunicated plea offer was belied by the Government's assertion that no such offer existed, and by defense counsel's affidavit that he communicated all formal plea offers and discussed an informal plea offer with Petitioner. (ECF No. 62 at 5). In her reply brief, Petitioner submits that Mr. Arleo's handwritten notes contain a plea offered by the Government

---

[1] Petitioner's additional citations to noncontrolling precedent do not establish that this Court overlooked controlling decisions of law, as would entitle Petitioner to relief under Fed. R. Civ. P. 59(e).

4

but not delivered to her.  (ECF No. 66 at 1).  As proof, Petitioner submitted a copy of an email dated August 11, 2015, with the heading "Patel Plea Agreements."  (*Id.* at 2).

To begin, this Court did not ignore the holdings in *Frye*, *Lafler* and *Padilla*.  This Court applied the *Strickland* standard to each of Petitioner's ineffective assistance of counsel claims, including those related to the plea process, citing both to *Strickland* and Third Circuit precedent, *United States v. Booth*,  432 F.3d 542, 546 (3d Cir. 2005) (citing *Hill v. Lockhart*, 474 U.S. 52 (1985)).  (ECF No. 55 at 30-31).  Petitioner further contends this Court was required to hold an evidentiary hearing on the alleged uncommunicated formal plea offer, citing *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992).  (ECF No. 58 at 9).  Petitioner's reliance on *Day* is misplaced.  In *Day*, a district court rejected the petitioner's ineffective assistance of counsel claim, without requiring a response from the Government, finding that no prejudice could inure from pleading not guilty.  Unlike *Day*, this Court directed a response from the Government on Petitioner's claim of an uncommunicated plea offer.  The Government provided the affidavit of defense counsel, Frank Arleo, Esq.  In his affidavit, Mr. Arleo explained that he had rejected the Government's August 5, 2015 plea offer at Ms. Patel's direction because she would not stipulate to a loss exceeding $4,358,902.  (ECF No. 27 at 138, ¶ 7(c); Exhibit E, ECF No. 27 at 156, 159).  Instead, Petitioner agreed to plead to factual stipulations that allowed her to disagree with the loss amount at sentencing.  (ECF No. 27 at 18-19; Exhibit G, ECF No. 168-81.)

In her reply brief, Petitioner suggests there was an intervening uncommunicated plea offer from the Government between the offer she rejected and the offer she accepted.  (ECF No. 66 at 2.)  Petitioner refers to Mr. Arleo's handwritten notes on an email dated August 11, 2015, mentioning waiver of a $5,500 per claim penalty, a freeze in the restitution number, and a limit on treble damages to one million dollars.  (*Id.*)  Treble damages and per claim penalties are features

5

of a False Claims Act civil action, not the loss amount in a criminal action for healthcare fraud. *See*, *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 769 (2000) (citing 31 U.S.C. § 3729(a)).  Defense counsel's handwritten notes include the phrase "Qui Tam Action" and "if close to settle civil case then reach out to attys in Qui Tam." (ECF No. 59-2.)  The notes refer to an attempt to negotiate a settlement in a civil qui tam action prior to the deadline for Petitioner to accept the plea offer extended by the Government in the criminal action.  The record conclusively establishes that there were only two formal plea offers made by the Government in the criminal action, and both offers were communicated to Petitioner.  (ECF No. 27 at 137-38, ¶¶ 7-13; Exhibits E, F, G, H, I, ECF Nos. 156-181).  There is no basis for an evidentiary hearing on an alleged undisclosed plea offer in this case.  Therefore, this Court denies Petitioner's motion to alter or amend the judgment based on her claim that counsel failed to communicate a plea offer in her criminal case.

Relatedly, Petitioner challenges this Court's denial of her supplemental motion for an evidentiary hearing, noting there is no requirement to show good cause for not presenting her arguments sooner.  (ECF No. 58 at 9-10.)  "[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases" as long as the exercise of authority is "a reasonable response to the problems and needs" confronting the court, and is not contrary to a limitation on the court's authority by rule or statute. *Dietz v. Bouldin*, 579 U.S. 40, 45-47 (2016) (citations omitted).  Consistent with this inherent authority, this Court explained why it would not entertain Petitioner's motion and supporting documents, filed well after the deadline in the briefing schedule, which had been extended several times. (ECF No. 55 at 26-27.)  Therefore, this Court denies Petitioner's motion for reconsideration of her supplemental motion for an evidentiary hearing.

**2.     The Plea Colloquy and *Padilla***

Petitioner seeks reconsideration of her claim that the Supreme Court's decision in *Padilla v. Kentucky* requires defense counsel to advise a client of the collateral consequences of a guilty plea on a related qui tam action. (ECF No. 58 at 13-14).  The Government opposes reconsideration, not only because Petitioner was aware of the qui tam action when she pled guilty, but because defense counsel are not required to inform defendants of collateral consequences of a plea agreement outside the immigration context. (ECF No. 62 at 6).  The holding in *Padilla* is limited to defense counsel's duty to advise a criminal defendant of the immigration consequences of a guilty plea.  *Padilla*, 559 U.S. at 369.  Therefore, this Court denies Petitioner's motion for reconsideration of this issue.

**3.     The Record Concerning the Loss Calculation**

Petitioner contends this Court failed to address her claim that the Government never disclosed its actual back-up data for its loss calculation to her counsel, and then destroyed the backup data, as evidenced by its response to Kirtish Patel's Freedom of Information Act request. (ECF No. 58 at 15).  In opposition to Petitioner's spoliation claim, the Government points to Petitioner's PSR, which disclosed the specific loss information, where the Government obtained the loss information, and described the basis for its loss calculation.  (ECF No. 62 at 7).  This Court, in rejecting Petitioner's attack on the Government's loss calculation, relied on the disclosure contained in the PSR.  (ECF No. 55 at 12-14, 36-37).  Even if the Government's back-up data was somehow lost or even destroyed, Petitioner failed to establish that she was prejudiced.  Her PSR contained the contact information from each insurance company that reported losses, and the loss amounts reported.  She had the ability to review and challenge these reported losses prior to sentencing.  Thus, this Court denies Petitioner's motion for reconsideration of this issue.

**4.      Claim of Innocence Regarding False Representations to Private Medical Insurers**

Petitioner asserts that the Government failed to address her claim that she did not make misrepresentations to private insurers regarding compliance with Medicare regulations, and this Court, therefore, erred in responding to her claim without the Government's response. (ECF No. 58 at 16-17). Petitioner refers to footnote 2 of this Court's Opinion. (*Id.*) In opposition to Petitioner's motion for reconsideration, the Government quotes Petitioner's plea colloquy, "Biosound Medical Services and Heart Solution, PC, [were] paid more than $4,386,133.75 by Medicare and private insurance companies for claims submitted for diagnostic testing and reports that were never interpreted by a licensed physician and for neurological diagnostic testing that was never supervised by a licensed neurologist[.]" (ECF No. 62 at 7-8). The Government suggests that damages from the private insurers were included because the diagnostic tests at issue were not authorized by any physician, let alone the type of supervisory physician required by Medicare. (*Id.* at 8). In her reply brief, Petitioner asserts that the Government did not charge Petitioner with a 'nonphysician ownership theory" and Judge Walls did not conduct a colloquy on "the non-physician ownership theory this Court *sua sponte* raised for the first time…" (ECF No. 66 at 13).

Petitioner claims to have raised this issue as a ground for relief in her amended § 2255 motion. In paragraph 132 of her amended § 2255 motion, Petitioner asserted: "[f]urthermore, as the private insurers did not have the same restrictions as Medicare, and a substantial number of tests were read by a physician (even assuming a supervising physician was not on staff) applying the same non-read rate to the private insurance companies is not supportable." (ECF No. 4-1, ¶ 132). This Court did not view this as an allegation that counsel failed to advise Petitioner that private insurance companies did not require a supervising neurologist for neurological diagnostic tests. In her reply brief, Petitioner more specifically alleged,

8

> Mr. Arleo made no effort to distinguish between revenue received through Medicaid reimbursements and that received from private insurance. Consequently, Mr. Arleo failed to challenge the government's loss calculation on the basis that private insurance payments, as opposed to payments from Medicaid, did not require a supervising neurologist as a condition precedent for payment for service.

(ECF No. 53 at 8). The Government was not required to respond to Petitioner's reply brief.

This Court's footnote 2, under the heading of "Background" in its Opinion, is dictum describing New Jersey state law requirements for medical diagnostic testing. (ECF No. 55 at 2). This Court's ruling on Petitioner's ineffective assistance of counsel claims based on the Government's loss calculation is found in Section III.G. of this Court's Opinion: "[s]ignificantly, however, the Government explained that many of the neurological diagnostic reports also contained forged physician signatures. Thus, liability was not premised solely on failing to have proper supervision by a neurologist." This Court did not rely on the dictum in footnote 2 of its Opinion. (ECF No. 55 at 40-42). Therefore, this Court denies Petitioner's motion for reconsideration based on Petitioner's assertion that this Court interjected a defense not raised by the Government.

## III.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), the petitioner in a § 2255 proceeding may not appeal from the final order in that proceeding unless he makes "a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason could not disagree with this Court's conclusion that Petitioner

is not entitled to reconsideration of this Court's denial of her amended § 2255 motion, no certificate of appealability shall issue.

## IV. CONCLUSION

For the reasons discussed above, this Court will deny Petitioner's motion to alter or amend judgment, and deny a certificate of appealability.

An appropriate order follows.

Date: _____June 7_____, 2023

_____
Hon. Susan D. Wigenton,
United States District Judge